RUBY SPERRY, Respondent, v. ALLIE COOK, Appellant.

Kansas City Court of Appeals, June 14, 1909.

1. **HOMESTEAD: Deed: Marriage.**    Where one records a deed to a farm with an intention to occupy it as a homestead after his marriage; the subsequent occupation by him in fulfillment of that intention, related the initiation of his right of homestead back to the date of the filing of the deed.

2. **CAUSE OF ACTION: When it Accrues.**    A cause of action is the wrongful invasion of a private right for which law or equity affords the injured party redress against the wrongdoer, and whether it be *ex contractu* or *ex delicto* the cause cannot accrue until a wrong has been committed.

3. **HOMESTEAD: Marriage Contract: Breach.**    The term "causes of action" as relating to causes founded on contract refers rather to the contractual obligations than to the breach, the test being whether the obligation was contracted before the filing of the deed, and where defendant promised to marry plaintiff in June, 1903, fixing February 24, 1904, as the date of the wedding, and in October, 1903, purchased a farm filing the deed therefor for record on February 11, 1904, and six days later married another woman and occupied the farm as a homestead, the plaintiff's cause of action for breach of promise accrued in June, 1903, and not at the date of the wedding, and an execution on a judgment obtained by her could be levied on the homestead even if the occupation as a homestead, related back to the filing of the deed. (**Ellison, J.,** dissenting.)

Appeal from DeKalb Circuit Court.—*A. D. Burnes,* Judge.

*Hewitt & Hewitt* for appellant.

*Hubbell & Hubbell* for respondent.

JOHNSON, P. J.—This is a proceeding to quash the levy of an execution on the ground that the property levied on was the homestead of the judgment debtor. After hearing the evidence, the trial court sustained the motion to quash, but afterward, on the hearing of plaintiff's motion for a new trial, reversed its ruling and restored the levy. After defendant's motions for a new trial and in arrest of judgment were overruled, an appeal was allowed him to the Supreme Court, but that court, for reasons stated in the opinion filed, held that the cause fell under the jurisdiction of this court on appeal and, accordingly, transferred it here. [Sperry v. Cook, 207 Mo. 699.]

In June, 1903, defendant, whose right name is J. Alden Cook, promised to marry plaintiff and February 24, 1904, was fixed as the date of the wedding. In October, defendant bought a farm of eighty acres in DeKalb county and filed the deed for record on February 11, 1904. Six days later, he married another woman and in March, he and his wife began the occupancy of the farm as their homestead. Plaintiff then sued defendant in the circuit court of DeKalb county to recover damages for breach of promise of marriage and on May 7th following, obtained judgment in the sum of $1,750. She had execution issued on this judgment and levied on the farm and the sole question for our consideration is whether defendant had acquired a homestead right to the property as against the cause of action on which plaintiff's judgment is founded.

It is provided in section 3622, Revised Statutes 1899: "Such homestead shall be subject to attachment and levy of execution upon all causes of action existing at the time of the acquiring such homestead except as herein provided; and for this purpose such time shall

be the date of the filing in the proper office for the record of deeds, the deed of such homestead," etc.   Construing this statute, the Supreme Court said in Cook v. Railroad, 63 Mo. 1. c. 396.   "The evident object of this section so far as it bears on the subject-matter of the present controversy was to establish an unalterable criterion to govern in all cases where disputes should arise as to the period when the homestead was acquired. That period as definitely settled by statutory enactment is 'the date of the filing in the proper office, etc., the deed of such homestead.' "

Invoking this rule, defendant argues that as his homestead right accrued on February 11, 1904, the date he filed his deed for record, and as plaintiff's cause of action did not exist until six days later when he broke his contract of marriage with her by marrying another person, the property is not subject to levy and sale under the execution.

To concede for argument, without so holding, that by recording his deed with an intention to occupy the farm as a homestead after his marriage, the subsequent occupation by defendant in fulfillment of that intention, related the initiation of his right of homestead back to the date of the filing of the deed; but it does not follow from this concession, as defendant appears to think, that the right of homestead antedated plaintiff's cause of action within the meaning of that term as employed in the statute under consideration. Strictly speaking, a cause of action is the wrongful invasion of a private right for which law or equity affords the injured person redress against the wrongdoer; and whether it be *ex contractu* or *ex delicto*, the cause cannot accrue until a wrong has been committed.   In actions on contract, the wrong usually consists of the breach of a contractual obligation; in actions *ex delicto,* of some tort such as trespass or negligence.   But in construing the term "cause of action" as used in the statute before us, the courts of this State, as well as

those of other jurisdictions, uniformly hold that in its relation to causes founded on contract, the term refers rather to the contractual obligation than to its breach, and the test to be applied in all such cases is whether or not the debt or obligation was contracted before the filing of the deed to the property claimed as a homestead, regardless of the question of when the breach of the obligation gave a right of action. [Farra v. Quigley, 57 Mo. 284; Stivers v. Horne, 62 Mo. 473; Lincoln v. Rowe, 64 Mo. 128; Berry v. Ewing, 91 Mo. 395; Titus v. Warren, 31 Atl. Rep. 297; Ellinger v. Thomas, 67 Pac. Rep. 529; Ingram v. Wilson, 125 Fed. Rep. 913; 15 Am. & Eng. Encyc. of. Law (2 Ed.), 634.]

A suit for breach of a marriage contract is an action *ex contractu* and not *ex delicto,* "though it partakes somewhat of the characteristics of such action." [Broyhill v. Norton, 175 Mo. 190.] It is true, the contract contained no promise to pay money and, therefore, did not evidence a money debt, but its violation none the less was a breach of a contractual obligation. The presumption must be indulged that defendant, when he entered into the contract, had in mind the damages to plaintiff which naturally would flow from his breach of promise and, impliedly, agreed to recompense her. The existence of plaintiff's cause of action must be held to be co-existent with that of the contract of marriage and the lien of her judgment to be superior to the claim of the homestead.

The case of Loring v. Groomer, 142 Mo. 1, such relied on by defendant, is not in point. Covenants of general waranty in a deed to real property run with the land and being *in rem* differ in the rules by which they are controlled from obligations *in personam.*

The judgment is affirmed. *Broaddus, P. J.,* concurs; *Ellison, J.,* dissents, and cause certified to the Supreme Court.

ELLISON, J. (dissenting).—I think the statute exempts homesteads only for the *debts* of the home-

steader. It is true that section 3622, Revised Statutes 1899, denies an exemption "upon all causes of action existing at the time of the acquiring such homestead;" and that a cause of action is held to mean the inception of the obligation rather than when it falls due, such as the date of a note or making an account. [Farra v. Quigley, 57 Mo. 284; Lincoln v. Rowe, 64 Mo. 138; Titus v. Warren, 67 Vermont 242.] And this will apply to a contingent obligation such as that of a surety. [Berry v. Ewing, 91 Mo. 395.] But the wording of the statute does not exclude the idea that the cause of action must itself either be a debt or ripen into a debt by judgment. A judgment for money resulting from an action for a tort, is a debt, but the tort itself, for instance the utterance of a slander, does not create a debt. That the statute contemplates the existence of a debt and that it uses the phrase "cause of action" as of the same import as debt, is seen from other sections. Thus, sections 3619 and 3623 refer to the "debtor" and "debts," the latter section using the phrase "cause of action" in the same sense with the word "debtor." That the homesteader must be a "debtor" is made to appear clearly in section 3620, which passes the homestead to the widow and children exempted from "the payment of the *debts* of the deceased unless legally charged thereon in his lifetime." There can be no doubt but that the homestead which is not exempted, which is made liable in section 3622 "upon all causes of action" existing when the homestead was acquired, is the same homestead which passes to the widow and children upon the homesteader's death freed from his debts "unless legally charged thereon in his lifetime." And there ought not to be any doubt that the mere utterance of a slander, or commission of other tort, not convertible into an implied contract to pay for property loss, is not legally charging a debt against the homestead. No homestead which would pass to the widow and children free of debts if

the homesteader should die, would be liable to attachment or execution under section 3622.

It is true, as just intimated, that there are torts which may be waived and actions *ex contractu,* on an implied contract, may be sustained, as, for instance, the wrongful conversion of property. In such an action a homestead acquired after committing the tort and before judgment, would be liable. In such case there is an injury to property rights and an implied promise to pay and the relation of debtor is created by that means.

But since an action for breach of promise of marriage is regarded as founded on contract, it may be suggested that the foregoing observations are not applicable. I have made them to show that a debt must exist against the homesteader prior to the acquisition of his homestead in order to subject it to execution. It makes easier the solution of the question whether a promise of marriage creates a debt before judgment. While it is true that an action for a breach of promise of marriage is regarded as being founded on contract and not on tort, yet "it partakes somewhat of the characteristics of such an action," of tort. [Broyhill v. Norton, 175 Mo. 190, 203.] In most respects it does not partake of the nature of an action on a contract. It is *sui generis.* It does not survive the promisor. [Wade v. Kalbfleisch, 58 N. Y. 282; Price v. Price, 75 N. Y. 244; Grubbs v. Sult, 32 Gratt. 203; Flint v. Gilpin, 29 West Va. 741; Burton v. Mill, 78 Va. 468, 481; Stanley v. Vogel, 9 Mo. App. 98.] There is an interesting discussion of the subject by Lord ELLENBOROUGH in Chamberlain v. Williamson, 2 M. & S. 408, a portion of which may well be quoted: "Executors and administrators are the representatives of the temporal property, that is, the debts and goods of the deceased, but not of their wrongs, except where those wrongs operate to the temporal injury of their personal estate. But in that case the special damages ought to be stated on the rec-

ord; otherwise the court cannot intend it. If this action is maintainable, then every action founded on an implied promise to a testator, where the damage subsists in the previous personal suffering of the testator, would be also maintainable by the executor or the administrator. All injuries affecting the life or health of the deceased; all such as arise out of the unskillfulness of medical practitioners; the imprisonment of the party brought on by the negligence of his attorney; all these would be breaches of the implied promise by the persons employed to exhibit a proper portion of skill and attention. We are not aware, however, of any attempt on the part of the executor or administrator to maintain an action in any such case. Where the damage done to the personal estate can be stated on the record, that involves a different question. Although marriage may be regarded as a temporal advantage to the party as far as respects personal comfort, still it cannot be considered in this case as an increase of the individual transmissible personal estate, but would rather as an extinction of it, though that circumstance might have been compensated by other advantages. Loss of marriage may, under circumstances, occasion a strict pecuniary loss to a woman, but it does not necessarily do so; and unless it be expressly stated on the record by allegation, the court cannot intend it."

It was therefore held in that case that an administrator cannot maintain an action for breach of promise of marriage.

The peculiar nature of the damages and the mode of ascertaining them make the action personal, and any other damages would be incidental. The statute (Sec. 96, R. S. 1899) concerning survival of actions does not apply to such case.

Having, I think, shown that in order to make the homestead liable the homesteader should become the debtor of the plaintiff before he acquired the homestead, it is next in order to inquire whether a promisor in a

Sperry v. Cook.

promise of marriage is, before judgment for a breach, a debtor of the promisee. The breadth of the meaning to be given the word creditor or debtor depends upon the subject in which either is used. Ordinarily they signify a relation whereby one has given credit to the other and that other owes to him the amount of the credit thus extended. But when we use the word creditor in connection with fraudulent conveyances we find that it has much wider significance than is commonly attached to the word debtor. Thus, where one has committed a tort against another and then conveys his property to avoid possible consequences, the latter, even before bringing an action, is a creditor in the sense of the statute. It has been so held in cases of slander and other torts. [Walradt v. Brown, 1 Gilman 397; Bongard v. Block, 81 Ill. 186; Lillard v. McGee, 4 Bibb 165; Jackson v. Meyers, 18 John. 425; Cook v. Cook, 43 Md. 522; Miller v. Dayton, 47 Iowa 312; Chalmers v. Sheehy, 132 Cal. 459; Schaible v. Ardner, 98 Mich. 70.]

But one who commits a tort by fraudulently converting another's property is not a debtor in the sense of the statute allowing an attachment for a debt fraudulently contracted. [Finlay v. Bryson, 84 Mo. 664.] Nor is a claim for unliquidated damages, before judgment, a debt. [Zimmer v. Schlechauf, 115 Mass. 52; Witz v. Mullins, 90 Va. 805.]

"A claim for uncertain and unliquidated damages is not a debt. This is the settled doctrine of the courts of law and the same rule prevails in equity." [Duncan v. Lyon, 3 John. Ch. 351; Appeal of City of Erie, 98 Pa. St. 398, 402.] "The word 'debt,' even in its broadest signification, implies that the consideration of the obligation of the debtor has been executed on the part of the creditor, and the payment of the debt discharges the obligation." [Pettibone v. Railway, 148 Mass. 411.] A claim for a wife's support, who is living apart fom her husband, is not a debt until judgment is rendered. [Willard v. Briggs, 161 Mass. 58.] The

defendant in assault and battery is not a debtor, before judgment, so as to enable the plaintiff to prove a claim in bankruptcy against him. [Beers v. Hanlin, 99 Fed. Rep. 695.]

A debt is defined to mean something specific and definite. And while I will by no means say that it is used in the homestead statute in the full restricted sense of a technical definition of the word, yet we should confine its meaning to something tangible. A debt is the antithesis of a claim for unliquidated exemplary damages, which have no measure but that which may be meted out, unlimited save by the judgment of a jury.

In Virginia a homestead is made exempt from "debts," and it was held that a claim for breach of promise of marriage was not a debt, even after judgment, and therefore the homestead was not exempt under the terms of the statute. [Burton v. Mill, 78 Va. 468, 481.] I cite that case merely as showing the meaning attached to the word "debt." In that State the exemption was for "debts contracted." And the view was that a breach of promise was not a debt contracted. I will however state, in passing, that since the statute was made for the benefit of the family instead of, alone, for the wrongdoer, the exemption (other conditions being proper) should be sustained in judgments rendered for a tort as well as contract where the wording of the statute will permit it, as I think the statute of Missouri does. This is the view stated in Mertz v. Berry, 101 Mich. 32; Dillinger v. Tweed, 66 N. C. 206; and Gill v. Edwards, 87 N. C. 76; Parker v. Savage, 6 Lea 406.

In the case last cited the Supreme Court of Tennessee sustained a homestead exemption against an execution issued on a judgment for damages for false imprisonment. The homestead law was passed after the tort had been committed and an action instituted, but before the judgment was rendered. It was held that the law did not impair the obligation of a contract

since the commission of the wrongful act did not create a debt, and it did not become a debt until judgment.

In Cook v. Newman, 8 How. Pr. 523, where prior to judgment but subsequent to breach of promise of marriage, the homesteader filed his claim of homestead entitling premises to be exempted, and where the statute was that no property should be exempt for a debt contracted for purchase price, or prior to recording of deed, or of notice, it was held that the damages were not a property loss, but purely personal and frequently vindictive, and were not a debt. So in Walker v. Barnes, 5 Taunt. 779, it was held that damages for breach of promise of marriage was not a debt before judgment. And the same was held by the Supreme Court of Massachusetts in Stebbins v. Palmer, 1 Pick. 71, 77.

In view of these considerations I think it apparent that a mere promise of marriage neither makes the promisor a debtor nor creates a cause of action. The case of Loring v. Groomer, 142 Mo. 1, bears directly on the question. There Gromer made a warranty deed, including the usual covenants. After the execution of the deed he acquired a homestead. After acquiring the homestead there was a substantial breach of his covenants. In other words, he acquired the homestead after his covenants were made but before they were broken. It was held that there was no existing cause of action until the breach, and as the homestead was acquired before that, it was exempt under the statute. That case was founded altogether on contract, while the one at bar partakes of the attributes of a tort. The facts in this case do not call for a decision whether a mere breach of promise of marriage, before judgment, would be construed as making the promisor a debtor, or as establishing a "cause of action" in the sense of the statute, and that question is left undecided, as the homestead here was acquired before the breach.

138 App.—20

In my opinion defendant did not become plaintiff's debtor until after she obtained her judgment, and as defendant had acquired the homestead in controversy before that time, it is exempt under the terms of the statute.

Deeming the opinion of the majority in conflict with the decision of the Supreme Court in Loring v. Groomer, the case should be certified to the Supreme Court.