**James A. FERM and Sheron M. Ferm, Plaintiffs-Appellants,**

**v.**

**June CRENSHAW (Harrison), Defendant-Respondent.**

**No. 25539.**

Kansas City Court of Appeals, Missouri.

June 7, 1971.

Lyle McClain, Kansas City, for plaintiffs-appellants.

Jon M. Krebbs, The Legal Aid and Defender Society of Greater Kansas City, for defendant-respondent.

CROSS, Judge.

On April 5, 1968, a judgment for $1,271.-01 was rendered in magistrate court in fa-

vor of plaintiffs and against defendant, and a transcript thereof was duly filed with the clerk of the circuit court. Pursuant to general execution, the Sheriff of Jackson County levied upon real estate belonging to the defendant[1] and sold it at public auction to the plaintiffs, on September 15, 1969. On September 23, 1969, the sheriff delivered to plaintiffs his deed therefor, duly acknowledged in open court. This present proceeding arises upon defendant's motion to set aside the sale under execution, in which she alleges that she had a homestead in the subject real estate, as provided for by V.A.M.S. Section 513.-510; that such homestead was exempt from execution on plaintiffs' judgment; that the execution sale was illegally conducted and void because the sheriff had not appointed three disinterested appraisers to fix the location and boundaries of defendant's homestead, and, for the further reason there was no interest in the real estate subject to execution on plaintiffs' judgment.

Plaintiffs' reply to defendant's motion alleged they were owners of the property by purchase at the execution sale and denied that defendant had any homestead interest that was exempt from execution and sale.

Upon hearing, the circuit court entered conclusions of law to the effect that defendant occupied the subject property prior to the entry of judgment, that she was entitled to claim her homestead exemption therein, and that the sheriff's sale was void because appraisers were not appointed as required by Section 513.480 V.A.M.S. The court entered judgment as follows: "IT IS THEREFORE ORDERED: Defendant's motion to set aside sale under execution is *sustained*. The Execution Sale of September 15, 1969 is declared void and is set aside." Plaintiffs have appealed.

The determinative appeal question is whether defendant had established a homestead in the real estate prior to the accrual of plaintiffs' cause of action, and thereby rendered the property exempt from execution on plaintiffs' judgment.

■ No party has raised the question of our jurisdiction. However, as Judge Bennick said in Williams v. Luecke, Mo.App., 152 S.W.2d 991, "the question inevitably suggests itself as to whether a proceeding of this character, a motion to quash an execution and set aside the sale of real estate thereunder, involves title to real estate in a constitutional sense so as to vest appellate jurisdiction in the Supreme Court." In the older cases, foremost of which were McAnaw v. Matthis, 129 Mo. 142, 31 S.W. 344 and Stinson v. Call, 163 Mo. 323, 63 S.W. 729, the Supreme Court took the position that an appeal from an order setting aside an execution sale of land was properly taken to the Supreme Court. On that point those cases were specifically overruled in State ex rel. Reed v. Elliott, 180 Mo. 658, 79 S.W. 696; Moore v. Stemmons, 192 Mo. 46, 90 S.W. 434 and Lawson v. Hammond, 191 Mo. 522, 90 S.W. 431. Later opinions have consistently held "It is not enough (to involve title to real estate) that the judgment, when carried into execution, will affect the title to land. The title must be involved in the suit itself, and be a matter about which there is a contest", as was said in Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 2 S.W.2d 771. As our conclusion on the jurisdiction question, we adopt and quote the following statement from Williams v. Luecke, supra: "Both reason and precedent determine the question to the contrary. Conceding that title to real estate would have been incidentally affected if the court had sustained the motion, such question was nevertheless not directly involved in the case as it is required to be in order to invest appellate jurisdiction in the Supreme Court. Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 2 S.W.2d 771. The issue involved on the merits of the motion was the validity of

---

1. Described as "The West 100 feet of Lot 29, Suburban Acres, a subdivision in Grandview, Jackson County, Missouri."

the sale, and not the title acquired by plaintiff, about which there was no controversy if the sale itself was valid. Absent a contest about title, the proceeding was not one involving title to real estate within the meaning of the constitutional provision, and appellate jurisdiction is therefore properly vested in this court to which the appeal has been allowed. State ex rel. Ross and to Use of Drainage Dist. No. 6 of Pemiscot County v. Martin, 338 Mo. 1067, 93 S.W.2d 911; City of St. Louis v. Gottschall, Mo.App., 121 S.W.2d 239."

From the testimony of defendant and her witness Don E. Klahn the following facts appear: On February 24, 1967, Mr. Klahn and his wife were the record owners of the subject property. On the stated date defendant and her then living husband, Harold Crenshaw, entered into a contract with the Klahns to purchase the sellers' equity for the agreed consideration of $1,300.00 and assume an existing mortgage in excess of $11,000.00, held by Prudential. Defendant paid only $100.00 down and agreed to pay the remainder in monthly installments. The Klahns retained title and delivered no deed, but defendant and her husband took possession of the property, and the family proceeded to occupy it as their home until Mr. Crenshaw's death on September 30, 1967. Thereupon defendant rented the premises to another person and moved to residence property owned by Mr. and Mrs. Ferm, the plaintiffs, which she was able to rent for a lesser amount than the rental she received for the property she had vacated. Defendant explained that she applied the amount thus gained to help pay for the real estate she had contracted to purchase.

On January 27, 1968, the plaintiffs gave defendant formal written notice to vacate their premises because of her alleged breach of lease provisions causing extensive damage to the property. Pursuant thereto, defendant vacated the Ferm property in February, 1968, and moved back to the premises she had contracted to purchase from the Klahns.

On March 1st, 1968, plaintiffs filed their magistrate court suit against defendant which resulted in the previously mentioned judgment entered on April 5, 1968, providing that plaintiffs recover $1,271.00 from defendant because of waste and damages to the premises.

On April 3, 1968, defendant married one Ronald Hill Harrison, but it appears that Harrison never contributed to the support of defendant or her six children and that he and defendant have separated. Defendant derived family support from V.A. and Social Security benefits, and it is on that basis that she claimed to be the head of a family.

By October 30, 1968, defendant had completed her down payments to the Klahns under her contract to purchase, and on that date they conveyed the property to defendant by a warranty deed, but defendant did not file that instrument of conveyance until November 15, 1968. She held record title to the property only seven days, and conveyed it to her parents by warranty deed on November 22, 1968. She continued to live in the property until July of 1969, at which time she vacated it and moved to Barnett, Missouri.

Notice of levy on the subject real estate to satisfy the Ferms' judgment was served on defendant in June of 1969 and the property was sold on September 15, 1969, at public auction, as heretofore noted. The sale was subject to Prudential's first deed of trust on which $11,200.00 was owing, with installments delinquent for the past four months aggregating $429.00. Defendant valued the property at $12,700.00 and claims that the $1,500.00 homestead exemption allowed under Section 513.475 is greater than her equity in the property. Plaintiffs were the sale purchasers and bought the real estate, subject to Prudential's mortgage, for the price of $750.00.

■ The first and pivotal point urged by the appealing plaintiffs is a submission that defendant had no homestead in the

subject real estate exempt from execution on their judgment because (a) Section 513.510 provides that no homestead exemption exists until the filing for record of a deed to the real estate in which the homestead is claimed, (b) Section 513.510 also provides a homestead is not exempt from execution on causes of action that arose prior to the time homestead is acquired, and (c) the record clearly shows that plaintiffs' cause of action arose and judgment thereon was rendered (on April 25, 1968) *prior to the filing of defendant's deed for record on November 15, 1968*. Defendant concedes that her debt to plaintiffs arose prior to the time she acquired legal title and filed her deed for record, but she insists that notwithstanding Section 513.-510, her "equitable interest" in the real estate, arising from her purchase of the Klahns' equity was sufficient to support her homestead exemption claim under Section 513.475. Defendant's position is not tenable because it is inconsistent with the interpretation of Section 513.510 made by Missouri courts in an unbroken succession of decisions. We accept plaintiff's view of the law as it applies to the undisputed facts, and rule the point in their favor for reasons here stated.

The homestead is an estate sui generis, unknown to the common law, and is created by constitutional or statutory law of the individual sovereignty. Although homestead provisions are construed liberally in favor of the beneficent purposes for which they were enacted, the homestead right cannot transcend the intended scope of the law which creates it. See 40 Am.Jur.2d Section 3, p. 117. The homestead law in this state was first enacted by the legislature in 1862.[1] The original definition of homestead has been carried into succeeding enactments without material change. Homestead is presently defined by V.A.M.S. Section 513.475.

The particular *provision of the homestead law* about which this controversy centers, present Section 513.510, is identical with its original enactment in 1862, except for language inserted by the Laws of 1887, (which is irrelevant to the question considered). Here quoting Section 513.-510, we parenthesize the 1887 addendum to identify it:

"Such homestead shall be subject to attachment and levy of execution upon all causes of action existing at the time of the acquiring such homestead, except as otherwise provided in sections 513.475 to 513.530; *and for this purpose such time shall be the date of the filing in the proper office for the records of deeds, the deed of such homestead*, (when the party holds title under a deed, but when he holds title by descent or devise, from the time he becomes invested with the title thereto); and in case of existing estates, such homestead shall not be subject to attachment or levy of execution upon any liability hereafter created." (Italics supplied.)

The *import of quoted Section 513.510*, as it applies to this case, is that in order to defeat the levy of an execution upon property claimed as a homestead, the claimant must be able to show not only that the homestead property has been acquired and occupied as such, but also that (except when the property is acquired by descent or devise) *the deed to the homestead property had been filed for record before the creation of the execution debt*. A long line of Missouri cases has consistently held that view of the statute's intended effect.

In the early case of Shindler et al. v. Givens, et al., 63 Mo. 394, the Supreme Court said of the statute (present Section 513.510):

"That section provides, among other things: 'Such homestead shall be subject to attachment and levy of execution upon all causes of action existing at the time of acquiring such homestead, * * * and for this purpose, such time

---

1. The homestead statutes of Missouri are patterned from the Vermont statutes.

shall be the date of the filing in the proper office for the records of deeds, the deed of such homestead.' etc., etc.

The evident object of this section, so far as it bears on the subject matter of the present controversy was to establish an unalterable criterion, to govern in all cases where disputes should arise as to the period when the homestead was acquired. That period, as definitely settled by statutory enactment, is 'the date of the filing in the proper office, etc., the deed of such homestead.'

Plaintiffs' cause of action must certainly have existed anterior to the rendition of judgment in their favor, in August, 1873, and since Given's deed was not filed for record until January, 1874, we cannot, without altogether ignoring the legislative test, hold that any homestead was acquired prior to the last mentioned period. This being the case, Givens had no such homestead right as could be successfully asserted in opposition to a cause of action which was necessarily a subsisting one at the time the plaintiffs recovered judgment against him."

Following Shindler v. Givens, there has been an abundance of Missouri decisions holding that as to the time from which the homestead right is to be reckoned, the statute (present Section 513.510) is not susceptible of interpretation or construction to include any meaning beyond that literally expressed in its plain language.

One of the clearest expressions of the statute's intended meaning is found in Acreback v. Myer, 165 Mo. 685, 65 S.W. 1015, where the Supreme Court said:

"In view of the express statutory provision defining and regulating the rights of the homesteader in this state, it would seem that all confusion and doubt arising out of the consideration of that question should have been forever put to rest. After declaring of what the homestead shall consist, and designating the amount thereof to be claimed, and its value, it is further expressly provided * * * (quoting Section 3622 R.S.1899—presently Section 513.510) * * *. These statutes leave nothing in confusion or doubt,—nothing to conjecture or to interpretation. They are the plain and unmistakable declaration of a right, and the equally clear and positive assertion of when that right attaches.

No attempt at interpretation could make more certain the meaning of the language used, or elucidate more fully the purpose of the act. Before one can avail himself of the benefits of a homestead exemption to defeat the levy of an execution upon his property, he must be able to show not only that the homestead had been acquired, but that the deed thereto had been filed for record in the proper office of his county, before the creation of the execution debt."

To demonstrate that in later decisions the Supreme Court has not departed from its earlier expressed views, we quote briefly from Crary v. Standard Investment Co., 313 Mo. 448, 285 S.W. 459:

"His homestead exemption right did not attach until he filed his deed for record. * * * The statute definitely says when the deed is filed for record is the time when the homestead exemption right attaches. It would not even attach then unless it is actually occupied as a homestead. If then, in fact, the plaintiff did not move back to Missouri until 1912, his homestead right could not attach until then. In any event it could not attach until he obtained his deed and filed it for record."

For cumulative authorities construing the statute in question in the same manner as those from which we have quoted, see: Farra v. Quigly, 57 Mo. 284, Lincoln v. Rowe, 64 Mo. 138, Tennant v. Pruitt, 94 Mo. 145, 7 S.W. 23, Payne v. Fraley, 165 Mo. 191, 65 S.W. 292, Barton v. Walker, 165 Mo. 25, 65 S.W. 293 and Sperry v. Cook, 138 Mo.App. 296, 120 S.W. 654.

It is futile for defendant to suggest that her "equitable interest" acquired by virtue of her contract to purchase the property was sufficient to support her homestead claim. The Supreme Court has squarely ruled against that proposition. In Payne v. Fraley, 165 Mo. 191, 65 S.W. 292, defendant W. H. Fraley, the homestead claimant, "purchased" real estate from one Nettleton in 1888 by entering into a contract for a deed to be delivered upon payment of a specified purchase price. In August, 1892, Fraley contracted a debt which was resolved into judgment on August 30, 1893. On October 25, 1893, defendant assigned the contract to his wife without actual consideration and on the same day the Nettletons "made and executed and delivered" to defendants a deed in the wife's name conveying the real estate, which defendant Fraley had contracted to purchase. The deed was recorded on November 14, 1893. Upon those facts, defendants contended that homestead had been established prior to contraction of the debt and that the property was exempt from execution and sale. Insisting that the letter of the homestead act should be made to yield to its "manifest purpose", defendants argued that "occupancy" was the primary essential to a homestead right, that "possession" gives notice to all the world of the nature and extent of that right, and that therefore, "the homestead of a party should be secured from the time the head of the family purchases, moves upon, and occupies a place as his or her home, and not from the time he or she files for record his or her deed evidencing the right and ownership of the property." The Supreme Court unequivocally rejected those arguments as ineffectual to strike down the plain and unambiguous requirement of the statute in language quoted as follows:

"The language of the statute creating and confirming the homestead right in this state is, in its terms, no more definite and certain than the time when the acquisition of such right is to be recovered in determining its liability or nonliability to attachment and levy. It reads, 'Such homestead shall be subject to attachment and levy of execution upon all causes of action existing at the time of the acquiring such homestead, except as herein otherwise provided; and for this purpose such time shall be the date of the filing in the proper office for the record of deeds the deed of such homestead, when the party holds title under a deed, but when he holds title by descent or devise, from the time he becomes invested with the title thereto.' (Sec. 3622, R.S.1899). Such language can have but one meaning, and there is no occasion for interpretation.

This court, whenever called upon to consider the statute, has always held that the time of acquiring a homestead, so far as affects the question of its liability or nonliability to levy or attachment, dates from the filing of the homesteader's deed for record."

To support her contention that a householder vested with equitable title under an executory contract is entitled to the homestead exemption, defendant cites a text statement from 40 C.J.S. Homesteads § 81, p. 521, to the effect that as a general rule any equitable ownership or title, together with requisite occupancy, is an adequate basis for a homestead exemption. That rule is not recognized in this state as is clearly shown by the massive weight of Missouri authority. On the point presently discussed, defendant cites two cases, the first of which is Savings Trust Company of St. Louis v. Skain, 345 Mo. 46, 131 S.W.2d 566, calculated to demonstrate that defendant was vested with equitable title during the time her contract for purchase of the real estate was executory, a fact we would recognize without authority. The other case cited by defendant is Barton v. Walker, 165 Mo. 25, 65 S.W. 293, from which she quotes a random excerpt as follows: "A distinguished text writer on this subject has said that a homestead right may be had in an equitable estate (Thomp. Exemp. § 170), and we see no reason to

question that proposition. We have· held that a homestead may exist in an equity of Redemption." The foregoing statement is of no benefit to defendant. The "equity of redemption" referred to is a term loosely used in the law of mortgages to describe either the right of a mortgagor, in equity, to redeem after default of mortgage conditions, or the estate which remains in the mortgagor ·after execution of the mortgage. 59 C.J.S. Mortgages § 813, p. 1556. In either case a valid, effectual and enforcible mortgage would necessarily rest upon the mortgagor's legal ownership evidenced by a deed of conveyance duly recorded or by proof of descent or devise. Understandably, defendant makes no mention of the court's *ruling* in Barton v. Walker. The opinion is a strong pronouncement that both occupancy and ownership of the property, either by recorded deed or descent of title, are essential to acquisition of a homestead. The author carefully noted that nothing said in the opinion was in conflict with the court's previous decisions, specifically mentioning Shindler v. Givens, supra, Tennant v. Pruitt, supra, and Payne v. Fraley, supra.

It is our conclusion that defendant did not establish a homestead prior to November 15, 1968, the date she recorded her deed from the Klahns. Therefore, it necessarily follows, and we rule, that the subject real estate was not exempt from execution to satisfy the plaintiffs' judgment on their cause of action which admittedly arose prior to November 15, 1968. Whether defendant established a homestead subsequently to that date is immaterial to any issue and we need not explore that question.

■ We take cognizance of one additional issue raised by the parties—whether, as the trial court held, the sale was void by reason of the sheriff's failure to appoint appraisers as provided for in Section 513.-480. As bearing on the question we take note of these facts: Defendant actually had no homestead exempt from execution

on plaintiffs' judgment. She had been personally served with notice of the sheriff's levy on the real estate. She made no objection to the levy or sale until after the property was sold and until she filed her motion attacking the sale. At the time of levy and sale, the property was not in her name, she was living in Barnett, Missouri, and was not occupying the premises. As shown by the evidence, it appeared that the premises had been abandoned, and the record owners of the property never opposed the sale.

With that factual background we examine Section 513.480. Its pertinent provisions are as follows:

"Whenever an execution shall be levied upon the real estate of such housekeeper or head of a family, of which such homestead may be a part, or upon such part of any homestead as may be in excess of the limitation of the value thereof created in section 513.475, such housekeeper or head of a family shall have the right to designate and choose the part thereof to which the exemption created in section 513.475, shall apply, not exceeding the limited value; and upon such designation and choice, or in case of a refusal to designate or choose, the sheriff levying the execution shall appoint three disinterested appraisers, who shall, first being sworn to a faithful discharge of their duties, fix the location and boundaries of such homestead, * * *."

It is manifest from reading the statute that the appointment of appraisers is required only in situations where a homestead interest actually exists, and that if there is no homestead, it would be a meaningless and barren ceremony to appoint appraisers. The procedural requirements dictated by Section 513.480 were not intended to apply where homestead does not exist or is subject to execution, and certainly are not intended to apply in every case where execution is levied on real estate. In any event, defendant could complain only of a techni-

cal noncompliance since she had no homestead interest susceptible of any real injury.

The Supreme Court settled this question in Shindler v. Givens, 63 Mo. 394, where, as in this case, there was no foundation for a homestead claim because the cause of action on which judgment was rendered existed prior to the recording of claimant's deed to the property. There is further identity with this case in that upon execution sale no appraisers were appointed by the sheriff. The court ruled as follows:

"And if it shall clearly appear that Givens was not entitled as he claimed, the failure of the sheriff to appoint appraisers, etc., etc., could certainly work the claimant no hurt, and therefore the mere technical remissness of the officer in this regard, would furnish no ground for quashing the levy. For it cannot, with any show of reason, be asserted, that the legislature ever intended that the barren and meaningless ceremony of appointing appraisers should occur as to a lot or tract of ground, wherein no homestead right could, under the circumstances of the particular case, by any possibility exist."

In Smith v. Thompson, 169 Mo. 553, 69 S. W. 1040, the Supreme Court indicates that the omission of a procedural act prescribed by the homestead statutes does not void an execution sale when there is no homestead right in the property sold. The court said:

"It is also urged that the sheriff's sale was void because he did not give notice to DeVorss that he had the right of a homestead in the land. If the defendant in execution had been entitled to a homestead in the land, the sheriff's duty would have been to so inform him, but as he had no such right the statute in that respect had no application."

Defendant cites Tapley v. Ogle, 162 Mo. 190, 62 S.W. 431 and Karsznia v. Kelsey, Mo., 262 S.W.2d 844, to support her complaint of the sheriff's omission to appoint appraisers. Those cases are not in point. In both instances the judgment debtors had established that they had homestead rights in the real estate sold at execution sales conducted by sheriffs who had omitted to appoint appraisers. Obviously, the cited cases are without weight or persuasion in this case where defendant claimant possessed no right of homestead exempt from execution on plaintiffs' judgment.

Accordingly, the judgment is reversed and the cause is remanded with directions that the trial court enter an order denying defendant's motion to set aside the sale under execution.

All concur.