MARY SWAN *et al.*, Plaintiffs in Error, v. JAMES C. THOMPSON, Administrator, *et al.*, Defendants in Error.

### St. Louis Court of Appeals, April 29, 1889.

1. **Administration**: SALE OF ENCUMBERED REALTY: ADMINISTRATOR'S DUTIES AND LIABILITIES. Where an administrator, in the sale of lands belonging to the estate, sold the equity of redemption in an encumbered parcel for a nominal sum, upon the purchasers' agreeing to pay off the encumbrance, and the purchasers afterwards refused to perform their undertaking, whereupon the administrator paid eighty per cent. of the encumbrance out of the assets of the estate and obtained an order for the sale of the remaining realty, including a residuary interest of the heirs in lands set apart for homestead purposes, alleging that all the other assets had been sold, and that debts of the estate were still unpaid, and thereupon the plaintiffs, as widow and heirs of the decedent, institututed this proceeding against the administrator and the purchasers of the equity of redemption and their assigns, and also against the probate judge who granted the order of sale, seeking to enjoin the proposed sale, and for other relief; it is *held* that the proper remedy is against the administrator for his failure to exact indemnification from the purchasers of the equity of redemption, and that the other defendants are not proper parties in this suit. Upon the facts stated in the petition, the plaintiffs are entitled to equitable interposition, in setting aside the order of sale, and in restraining the administrator from proceeding under it. The administrator would have a right to be subrogated in place of the beneficiaries in the encumbrance, and to charge the land with the amount paid by him in liquidation of the same. The court erred, as to the administrator, in sustaining a general demurrer.

2. **Jurisdiction**: TRANSFER TO SUPREME COURT. A suit for an injunction restraining the sale by an administrator of his intestate's lands is not a proceeding involving title to real estate, and this case is therefore not transferable to the supreme court, under the constitutional provision.

*Appeal from the Cape Girardeau Circuit Court.*—HON. H. C. O'BRYAN, Judge.

REVERSED AND REMANDED.

*Linus Sanford*, for the plaintiffs in error.

(1)   Charles Swan having mortgaged the land in his lifetime his administrator could only sell the equity of redemption.   *Greenwell v. Heritage*, 71 Mo. 439 ; *Welton v. Hall*, 50 Mo. 296 ; *Jackson v. McGruder*, 51 Mo. 55 ; *Grayson v. Weddle*, 63 Mo. 523.   Then after selling this, the administrator could not apply the general funds to the payment of this debt secured by mortgage, and if he has so applied these funds by mistake or otherwise, it was his duty, to enforce this equity against the lands purchased by Oliver and Brooks, at the sale, before selling the residuary interest in the homestead. (2)   Whenever by accident, fraud or mistake a party has obtained an unfair advantage in a proceeding at law, which must make that court an instrument of injustice, a court of equity will interfere and restrain such action.   *Damschroeder v. Thias*, 51 Mo. 100 ; *Bresneham v. Price*, 57 Mo. 422 ; *Casiday v. Metcalf*, 66 Mo. 521.   It will enjoin a sale by a probate court. *Grumley v. Brown*, 86 Mo. 253.   And especially since under the law creating our system of probate courts, the circuit court has superintending control over them.

BRIGGS, J., delivered the opinion of the court.

This is a proceeding in equity instituted in the circuit court of the county of Cape Girardeau on the tenth day of July, 1888, by Mary Swan, widow of Charles Swan, deceased, and her children, and against the defendant Thompson, administrator of the estate of Charles Swan deceased, James T. Brooks, R. B. Oliver, George Reitzel, Frederick Ristig, and Joseph Koehler.

The plaintiffs state in substance, that Charles Swan on the eleventh day of January, 1877, borrowed of Greer W. Davis, the sum of four hundred dollars and gave his note with B. F. Wigginton and David T. Pace as sureties.   That on said day, Swan executed a deed

of trust to a trustee therein named, by which he con-
veyed forty acres of land to secure Wigginton and Pace
as his sureties on the note to Davis. Just when Swan
died is not alleged, but the defendant Thompson as
public administrator of Cape Girardeau county took
charge of his estate and on the seventeenth day of
February, 1881, the balance due on the Davis note
amounting to $355.82 was allowed by the probate court
of the county and classified as a demand against Swan's
estate.

That, at the February term, 1881, the administrator
presented a petition to the probate court asking for an
order for the sale of real estate for the payment of debts.
That Swan, at the time of his death, owned several
tracts of land, and, upon the filing of this petition,
commissioners were appointed to set off to the widow and
minor children of deceased (who are the complainants
in this proceeding) a homestead in decedent's lands.
That, on the nineteenth of August, 1881, the commis-
sioners filed their report allotting to plaintiffs certain
land for homestead purposes, and that plaintiffs imme-
diately took possession of the land and have continued
to live on it since that time. That, at the following
November term, 1881, the court ordered a sale of all
other lands belonging to said estate for the payment of
debts, and on the ninth day of May, 1882, the sale was
had. That, at said sale, the equity of redemption in
the land conveyed by the deed of trust, to secure
Wigginton and Pace in the payment of the Davis
debt, was also sold. That at said sale the announce-
ment was made by the administrator that the land
would be sold subject to the payment of the Davis
debt. That the defendants, Oliver and Brooks, bought
the land for ten dollars and also agreed to pay the bal-
ance due on the debt due Greer W. Davis. That the
fact that this tract of land was encumbered by this deed
of trust was stated in the administrator's petition for

the payment of debts, and that the probate court ordered the equity of redemption, only, in this tract of land, to be sold. That the land bought by Oliver and Brooks was worth eight hundred dollars, and that they paid the administrator ten dollars, the amount of their bid, and received an administrator's deed therefor. That, afterwards, Oliver and Brooks sold the land to defendant Reitzel and that Reitzel in turn had sold a portion of it to defendant Ristig.

Plaintiffs then allege that Oliver and Brooks refused to pay the Davis debt, and that Thompson, after said sale, had paid out of the assets in his hands belonging to the estate eighty cents on the dollar of the Davis debt, and that he had neglected and refused to take any steps to indemnify the estate for the money so paid on this demand. That, at the February term, 1886, the defendant Thompson procured an order from the probate court for the sale of the residuary interest of the heirs of Charles Swan in the land set apart to plaintiffs for a homestead, alleging that all other lands belonging to the estate had been sold, and that about four hundred dollars indebtedness against the estate remained unpaid, That, at the May term, 1886, the plaintiffs appeared in the probate court, and on their application, this order of sale was set aside, and it was then and there agreed that no further action would be taken without giving plaintiffs personal notice.

That, at the May term, 1888, the defendant Thompson procured from the probate court a renewal of the order of sale and is now threatening to carry out the order, by a sale of the land. That plaintiffs had no notice that any action would be taken in the premises, and were not advised of the order of the court until the expiration of the term. They also aver that if the estate was reimbursed by defendants Brooks and Oliver for the amount paid by Thompson on the Davis debt, that the amount would be sufficient to pay all debts due

and unpaid against the estate. The petition prays for an injunction restraining the administrator from selling the land under the said order of the probate court and also for general relief. There was no bond filed and no temporary injunction granted.

Defendants interposed a *joint* demurrer to this petition, urging: *First.* That no cause of action was stated against *any* of the defendants. *Second.* That defendant Koehler was not a necessary or proper party. *Third.* That the petition does not show any excuse or reason for a failure by plaintiffs to take an appeal from the judgment of the probate court ordering the sale of real estate belonging to the Swan estate. That plaintiffs have an adequate remedy at law against the administrator. The defendants, Brooks, Oliver, Reitzel, and Ristig, are not necessary or proper parties. That Elizabeth Davis, the owner of the Davis debt, and David T. Pace, and B. F. Wigginton are proper parties. The court sustained this demurrer and the plaintiffs refusing to amend, the court dismissed plaintiffs' bill and entered a final judgment for defendants The plaintiffs have sued out this writ of error and complain of the action of the court in sustaining the demurrer.

Counsel for defendants in error has not favored us with a brief in the case, and we are, therefore, uninformed as to the particular views he entertains concerning the legal questions involved. That a good cause of action is stated against the administrator, is quite clear to us, and that *no* cause of action is stated against the other defendants, and that they are not necessary or proper parties, is equally clear. The better practice would have been to file separate demurrers. As presented, we think the demurrer might have been sustained as to all of the defendants except Thompson, the administrator, and overruled as to him. *Bank v. Parris.* 35 Mo. 371.

Under the statements in plaintiffs' bill, they show themselves entitled to the interposition of the court of equity for the purpose of having the order of sale made by the probate court set aside, and the administrator enjoined from proceeding under it. As plaintiffs filed no bond, they were not entitled to a temporary order in the first instance, but if, on a final hearing, they should make good the averments in their petition, they would then be entitled to the restraining order. In order to obtain all the relief to which plaintiffs are entitled, and which would protect their interests to the fullest extent, no one is a necessary or proper party, except the administrator. He is the sole moving party in the proceedings which threaten to prejudice plaintiffs' interests.

If defendants Oliver and Brooks bought the land that was encumbered by the Davis debt, and the equity of redemption only was sold, and the administrator has used other assets of the estate to pay the encumbrance, then the administrator has the undoubted right to be subrogated or substituted in the place of the beneficiaries in the deed of trust, and he would have a clear equity against the purchasers for reimbursement out of the land, or the right to charge the land with the amount paid by him into whomsoever hands it had gone. *Greenwell v. Heritage*, 71 Mo. 459; *Welton v. Hull*, 50 Mo. 296.

If Thompson has failed to do this, and by reason of it the other assets in his hands are insufficient to pay the debts, then the probate court had no right to order the sale of the remaining real estate on motion of the administrator or the creditors. In such a case the remedy of the creditors would be on Thompson's bond. *Merritt v. Merritt*, 62 Mo. 150. It is apparent that this is a matter about which plaintiffs need give themselves no concern, and that these facts could not possibly form the basis for any legal controversy between them and

the purchasers at the sale, or their grantees. It follows that neither Brooks, Oliver, Reitzel, nor Ristig are necessary parties. Nor can we perceive on what principle or theory, Joseph Koehler, the probate judge, was thought to be a necessary party.

As we have stated above, if an insufficiency of assets to pay debts is brought about, by the neglect of duty of the administrator, in such a case, the probate court would not have the authority to order the sale of real estate to pay debts. If there has been a waste or *devastavit* by the administrator, the remedy of a creditor is primarily on the bond. That remedy must be exhausted and prove fruitless before the land of the heir can be sold.

There is another reason that suggests itself to our minds why the order for the sale of the land may have been improvidently granted. Our statute contemplates the settlement of estates within two years after the grant of letters. While we have no statute of limitation governing applications by administrators or creditors for the sale of land to pay debts, yet the supreme court (*Gunby v. Brown*, 86 Mo. 253) decided, "That such an application must be made within a reasonable time; and that the probate court had no authority to make such an order after unreasonable delay."

The ground upon which the doctrine rests is, that an administrator is entirely under the control and subject to the orders of the probate court, and if the court neglects its duty, then the law furnishes the creditor with an adequate remedy. In the case at bar, there may be very good reasons why the application for the sale of the land was not made at an earlier day, but in the absence of any proof we think there has been an unreasonable delay.

Assuming the facts stated in the petition to be true, it is quite clear for the reasons stated, that the order of

the probate court for the sale of the land was improvidently made, and it only remains with us, to determine whether or not a court of equity has the right to interfere. The manifest theory of the demurrer is that the objection should have been urged in the probate court, and if plaintiffs felt themselves aggrieved, then an appeal from the making of the order should have been taken. The answer to this objection is that plaintiffs aver that they had no *actual notice* of the making of the order, until after the expiration of the term of court, at which it was made. Under such a state of facts the court in case of *Gunby v. Brown*, 86 Mo. 253, expressly decided that a court of equity would interfere, and restrain the sale of lands under an erroneous order of the probate court.

The reason for the interference is, that a sale under such an order would cast a cloud on the title of the heir; and as such a sale would be apparently good on its face, and could only be shown to be bad by matters *dehors* the record, that it was the province of a court of chancery to prevent the threatened mischief. *Parks v. People's Bank*, 31 Mo. App. 16, ROMBAUER, J.; *Gunby v. Brown*, 86 Mo. 253.

We think that the petition stated a good cause of action against the administrator and the court erred in sustaining the demurrer as to him.

The defendants in error filed a motion to transfer the case to the supreme court for the reason that "The title to land is involved in the proceedings." The courts in discussing this question have uniformly held that suits to enforce special tax bills, to foreclose mortgages, to enforce mechanics' liens, and to enjoin the sale of real estate, do not involve the title to real estate, within the meaning of the constitution. The supreme court in *State ex rel. v. Court of Appeals*, 67 Mo. 200, says (referring to class of cases above mentioned): "The result of such

litigation may *affect the title* of real property, as would every suit in which a judgment could be rendered which would be a lien on real estate, but it cannot be said to *involve the title.*"  *Robertson v. Railroad*, 18 Mo. App. 187, is to the same effect.

The judgment will, with the concurrence of the other judges, be reversed and the cause remanded.