## WILBUR A. WESTON, Appellant, v. JOHN M. FISHER et al.

### Division One, March 2, 1915.

**APPELLATE JURISDICTION: Claim to Personal Property.** Whether the petition be a bill in equity or states an action at law, if it is not ejectment and asserts that the legal title is in plaintiff, and that defendants only claim possession of the farm until such time as their asserted interest in the increase of plaintiff's stock and other personal property used in a joint farming arrangement, which is averred to be of the value of $2000, may be adjusted, the Supreme Court does not have jurisdiction of an appeal from a judgment sustaining an objection to the introduction of evidence under the petition on the ground that plaintiff has an adequate remedy at law.

Appeal from Johnson Circuit Court.—*Hon. Andrew A. Whitsett,* Judge.

TRANSFERRED TO KANSAS CITY COURT OF APPEALS.

*George W. Littick* and *J. W. Suddath & Son* for appellant.

*Nick M. Bradley* and *T. N. Haynes* for respondents.

GRAVES, P. J.—The petition in this case is a legal curio and should be preserved. We shall not name it, but permit counsel to give it a name. They say in the brief here it is a bill in equity. They so considered it *nisi.* It reads:

"Plaintiff, for his cause of action, states that on or about the first day of March, 1908, defendants became and were the owners of the west half of the northwest quarter of the northeast quarter of section eleven, in township forty-six, of range twenty-nine, in Johnson county, Missouri, which thereafter became subject to two mortgages aggregating about seven hundred dol-

lars, and being in excess of its value; that the defendants undertook to cultivate the same but had very little property of any kind and were indebted to the plaintiff in the sum of $468, which was secured by a mortgage on said twenty acres. That between March 1, 1908, and March 1, 1909, plaintiff advanced to defendants at their special instance and request the sum of $133.90 for their use in purchasing feed and provisions, which sum has never been repaid.

"That on or about April 3, 1909, defendants, finding their inability to carry on said farm of twenty acres then and there entered into an agreement with plaintiff herein; that in consideration of said plaintiff advancing money, supplies, etc., to carry on and operate said twenty acres as a place to raise stock and poultry, said farm to be known as 'Rocky Ridge Poultry Farm,' they agreed that they would do all necessary work, give all care and attention and devote their entire time to said business of caring for said poultry and stock and that plaintiff would further advance to them money to pay grocery bills, dry goods, tobacco and other expenses incurred and out of the proceeds raised upon said farm defendants were to first repay to plaintiff the sums advanced for feed and personal expenses and next one-half of all sums paid for stock and implements and then deed to plaintiff a one-half interest in said twenty acres and from that time to share in the net proceeds with the plaintiff equally. That in pursuance of said agreement this plaintiff advanced to defendants the sum of $1369.12 during the year commencing April 1, 1909, and during all said year commencing April 1, 1909, fully performed his part of said agreement. That defendants gave but little or no attention to said business, and so poorly managed and controlled the same that at the end of the year, to-wit, April 1, 1910, they were indebted to this plaintiff personally $2026.02, paid out for grocery bills, feed, personal expenses of the defendants, hired help, etc., and in addition to that

had never paid to plaintiff any of said personal indebtedness; and that which arose from the increase of stock, etc., had used and not accounted for any part thereof. That during said whole year, as in the year before, defendants gave but little, if any, attention to the management and feeding of said stock or to the raising of any stock and made no effort whatever to pay said various obligations.

"That during the year 1909, to-wit, about August, 1909, plaintiff purchased one hundred and seven acres, adjacent to said twenty acres, which was described as follows, to-wit: The east half of lot one of the northwest quarter, the south seven acres of the west half of lot one of the northwest quarter, the northwest quarter of the southwest quarter and the west twenty acres of the northeast quarter, all in section two in township forty-six of range twenty-nine; and in the early part of 1910 he purchased the further tract of one hundred and thirty-two acres, described as follows: The east half of the northeast quarter of the southwest quarter, the southeast quarter of the southwest quarter, the west half of lot one of the northeast quarter and the west three-fourths of the southeast quarter of the southeast quarter, all in section two, in township forty-six of range twenty-nine, making in all two hundred thirty-nine acres, belonging to this plaintiff, adjoining said twenty acres, belonging to defendants.

"That at the expiration of the year 1909-1910, about April 1, 1910, the defendants having wholly failed to successfully manage said business, repay any of said indebtedness above enumerated, convinced that they were unable to make a success of the business or even to make a living, urged plaintiff in some way to relieve them, offered to deed to plaintiff said twenty acres for the consideration that plaintiff would assume the payment of the mortgages thereon, which proposition plaintiff then and there accepted and the deed to

said twenty acres was made pursuant to said agreement on May 10, 1910.

"That on said first day of April, 1910, at the time said agreement was made and accepted, a new oral agreement was entered into by and between plaintiff and defendants. That it was agreed that defendants, being wholly insolvent, wholly without property or means, and yet. without any place to go, that they should stay there in the building which is situated on said twenty acres above described, at the pleasure of the plaintiff as the employees, servants and agents of the plaintiff and operate said farm and receive as their compensation therefor one-half of the net proceeds of stock placed upon said farm by the plaintiff and one-half of the proceeds of the crops that might be sold from said place, over and above what was needed to feed the stock and one-half of the net proceeds of the poultry, after the same were fed. That out of said proceeds were first to be paid the personal indebtedness first above enumerated and that incurred up to the time of this agreement and any that might be thereafter incurred by plaintiff furnishing to defendants money to pay their personal bills and expenses; that these debts and expenses were to be paid out of the one-half of the net proceeds that would be going to the defendants.

"That in pursuance of this agreement plaintiff put upon said farm fifty-three head of sheep, sixteen head of lambs, one buck, one sow and ten pigs, forty head of two-year-old heifers and other cattle, two horses, three mules and implements to the value of three hundred dollars, to operate said farm as the employees of plaintiff, until such time as the plaintiff might make any further arrangements.

"That in pursuance of said contract the defendants took charge, as the employees of plaintiff, of said stock and implements and farm, agreeing to take care of all said stock, farm said lands in a good and husband-

manlike manner, receive for their part one-half of the net proceeds as above enumerated and their share of the net proceeds to be applied to their personal indebtedness as above enumerated.

"That during said year the plaintiff expended in improvements upon said farm something over two thousand dollars and expended for seed and feed something over four hundred dollars. That defendants wholly neglected to carry out said contract. That they employed hired help without the knowledge or consent of the plaintiff, for which plaintiff became liable and was compelled to pay in the sum of about four hundred dollars. That they neglected the stock and poultry in such manner that it caused plaintiff great loss, permitted the young of the poultry to drown and starve for inattention, permitted the hogs to deteriorate in value from lack of feed and attention. Permitted the cattle to so far deteriorate in value and condition from want of feed and care that this plaintiff was compelled to take about forty-five head of cattle to one Johnston, another farmer there, to be cared for and fed.

"That the defendant John M. Fisher so far neglected his duties that he gave the stock no attention whatever, that he became and was a morphine eater and remained almost constantly under the influence of the drug and gave no attention to plaintiff's business whatever. That he failed in every particular to carry out his part of said last agreement, as he had said former agreement.

"That in December, 1910, finding that defendants were wholly neglecting their duties, wholly failing to carry out said contract, wholly failing to give any attention to the stock of plaintiff or to the farming lands of plaintiff, plaintiff notified them that he would terminate their employment.

"That the defendants at that time agreed that they were wholly unable and incapable of carrying out their

contract and were willing to cease and get off said place and permit the plaintiff to put another party in the house and in charge of said stock and place and asked to be relieved from any further obligation to carry out said contract of employment and requested that plaintiff would, as soon as possible, procure some-one to relieve them. That plaintiff acceded to this request and agreement, terminated the contract of employment then and there, but requested that they would stay and care for said stock until he could pro-cure a man to take their place, which they agreed to do.

"That during the months of January and Febru-ary, 1911, plaintiff sent two different men down to look over the farm, to each of whom defendants showed the place and stock and expressed a willingness to turn the same over whenever they were ready to come, but plaintiff did not consummate a contract with either of them."

To this petition the defendant filed an answer in the nature of a general denial. A receiver was ap-pointed and qualified, and he then took possession of the property. When the cause came on for trial the following occurred:

"The plaintiff, to maintain the issues upon his part, introduced the following evidence:

"Wilbur A. Weston, being sworn upon the part of the plaintiff, testified as follows:

"Direct Examination by Mr. Littick.

"Q. Just state your name, please. A. W. A. Weston.

"Q. Where do you reside? A. Kansas City, Kansas.

"Q. Are you the plaintiff in this case? A. I am.

"By Mr. Bradley: The defendants objected to the introduction of any evidence in this case, for the rea-son that the petition, or bill in equity, does not state

a cause of action, for the reason that it is a suit in equity as shown by this bill and petition, and that it cannot be maintained, because the plaintiff has an adequate remedy at law, to-wit, for the recovery of the real and personal property, and this fact is shown on the face of the petition.

"Objection sustained by the court.

"Plaintiff excepted at the time."

The abstract of record shows no judgment, but going to the short transcript, which we are permitted to do, it appears that the plaintiff refused to plead further, and the court thereupon dismissed the bill and so entered judgment. From this judgment the appeal here is taken.

I. Counsel urge several questions for the reversal of the judgment *nisi*. They say that although they have treated the cause as one in equity

Pleading. throughout, yet we should now say that it is an imperfectly stated cause of action at law, and hold that the petition as thus construed did not wholly fail to state a cause of action, and the court erred in sustaining the objection to the introduction of evidence. They also urge that it sufficiently states a cause in equity.

Counsel for defendant urges that the petition is wholly deficient as a bill in equity, because it shows upon its face adequate, ample and plain legal remedies. They also urge that counsel, having proceeded below as in equity, cannot in this court shift their position and say that they are and were upon the law side of the court. They also urge with much force that plaintiff has little comfort from those cases such as the Duerst case, 163 Mo. l. c. 621, wherein this court has said:

"When the defendant files an answer and puts in issue the averments of the petition without having previously challenged their sufficiency, it is too late to

do so after the jury is sworn, if the language in the petition is susceptible of a construction that states a cause of action.''

They say that this court meant by such language that if the case was in equity and the language was susceptible of a construction that would make it state a cause of action in equity, then the objection to the admission of testimony should be overruled. Likewise, if it was on the law side. But the question is, can they shift from one side of the court to the other in order to have the appellate court say that a cause of action might be found within the language of the petition or complaint? We shall not answer any of those questions for reasons to be stated.

II. To our mind we are clearly without jurisdiction in this case. It is clearly not a cause wherein the title to real estate is so involved as to give us jurisdiction. It is not an action in eject-ment. We are not asked to destroy any muniment of title. We are not asked to decree title in plaintiff, but on the contrary plaintiff says he has the legal title, and the defendants only claim posses-sion until such time as their claimed interest in the personal property is settled. The language of the petition on this point is:

Appellate Jurisdiction.

''That about the latter part of February or first of March, 1911, plaintiff consummated an agreement with one Dunkel and about the first of March he went down to take charge and then for the first time defend-ants refused to permit him to move into the house and take charge of said stock, claiming that they had an interest in the increase and that as soon as that was paid they would surrender possession of everything, never at any time claiming that they had any right to the possession of the place, but persisted in holding possession and interfering with said Dunkel as the

agent and employee of the plaintiff, in taking charge of said place and stock.

"That the defendants now claim that they have some interest in the increase of said stock grown upon said place by way of payment to them for services rendered."

The amount involved does not give us jurisdiction. The personal property held by defendants is averred to be $2000 in value, and the alleged debt from defendants to plaintiff is $2,449.69. If we add them it falls short of our jurisdiction. We can find nothing upon the face of this record to give us jurisdiction. The case should be transferred to the Kansas City Court of Appeals and it is so ordered. All concur.