NETTLETON BANK v. ESTATE OF GEORGE W. MCGAUHEY, Appellant.—
2 S. W. (2d) 773.

Court en Banc, February 4, 1928.

*Sterling P. Reynolds* for appellant.

*Frank B. Klepper* and *O. E. Shultz* for respondent.

ELLISON, C.—This appeal was transferred to this court by the Kansas City Court of Appeals on the ground that the title to real estate is involved. The case concerns the administration sale of land in the probate court.

In January, 1923, the appellant widow-administratrix filed her petition in the Probate Court of Buchanan County under Section 106, Laws 1921, page 111, for an order to sell realty of the intestate, her deceased husband, subject to homestead rights and existing mortgages, to pay her allowance of $900 for a year's support, and, as we construe it, her $400 absolute allowance, both theretofore made by the court. The deceased left also two minor children, and the homestead rights referred to were vested in her and them. The statute mentioned, Section 106, since its reenactment in 1921, has sanctioned

the probate sale of land for the payment of the year's support allowance (it says nothing about the $400 statutory absolute allowance) and provides for the taking of the same steps as in case of the sale of real estate to pay debts.

The respondent Nettleton Bank thereupon filed an intervening pleading setting up that it had an allowed demand against the estate, representing an indebtedness contracted prior to the acquisition of the homestead by the deceased, and asking that in view of its claim the whole title to the land be sold, homestead interest included, for the payment of its debt as well as the widow's allowance. This relief evidently was sought under Section 5857, Revised Statutes 1919, which provides, in substance, that the homestead of a deceased person may be sold by the probate court free of the rights of the widow and children, for the payment of his debts "legally charged thereon during his lifetime." By this statute also, the procedure prescribed is the same as for ordinary probate sales to pay debts.

The probate court decided in favor of the bank, ordering the whole title sold, and the administratrix appealed to the circuit court. The latter court similarly ruled, and the administratrix took this appeal. Evidence was introduced by the respondent bank at the circuit-court trial showing its demand represented a note indorsed and negotiated to it by the deceased. The note was not reduced to judgment or the payment thereof secured by any voluntary or involuntary lien or incumbrance on the land during the lifetime of the deceased. The bank relied on the facts that its debt antedated the acquisition of the homestead and that its demand thereon had been allowed, to bring the claim within the homestead statute. The administratrix's position at the trial seems to have been that the bank's demand was invalid because it had made no effort to collect the note from the principal signer thereof, and because the demand based on the note had not been properly verified. She also claimed, as she does on the appeal, that the bank had no right to engraft its homestead proceeding on her application and that the court erred in awarding relief outside the scope of her application, in response to the bank's petition.

Late in 1926, long after the trial below, this court held in Maupin v. Longacre, 315 Mo. 872, 288 S. W. 54, 58, that the words "legally charged" appearing in Section 5857, imply a lien, incumbrance or claim to be satisfied out of the specific real estate proposed to be sold, and that, contrary to what had been assumed in many earlier cases, an indebtedness is not brought within the statute by the mere fact that it was contracted before the acquisition of the homestead. The latter circumstance will deprive a *living* debtor of his homestead *exemption* as against an attachment or execution on an antecedent debt, under another statute, Section 5860, Revised Statutes 1919; but this last mentioned statute has no application to the homestead *estate* with which Section 5857 is concerned. In view of this recent

decision it is not hard to determine how the case should be ruled on the merits, but the question of our jurisdiction presents difficulties.

Does this case involve title to real estate within the meaning of Article VI, Section 12, Constitution of Missouri? There are really two proceedings: (1) the application of the administratrix to sell the real estate of the deceased, subject to and excluding the homestead, (2) and the bank's application for the sale of the same land, including the homestead. But the two proceedings were treated as raising an issue whether the homestead should or should not be sold, and were tried as one case, one judgment was rendered and one appeal taken. In these circumstances, they should be treated as one case on appeal (Bramell v. Adams, 146 Mo. 87-8, 47 S. W. 931); and if either proceeding involves title to real estate, the whole case does.

Exclusive jurisdiction of appeals in cases involving title to real estate was vested in the Supreme Court by the constitutional amendment of 1884 (Sec. 5, Art. VI) which went into effect November 19, 1884. [State v. Kyle, 166 Mo. 287, 295 et seq., 65 S. W. 763.] Starting from that time and looking over the cases decided since, it appears that the Supreme Court has assumed jurisdiction on appeal without discussion or comment, in the following cases for the probate sale of land to pay debts: Gunby v. Brown, 86 Mo. 253; Ferguson's Admr. v. Carson's Admr., 86 Mo. 673; Desloge v. Tucker (Div. 1), 196 Mo. 587, 94 S. W. 283; In re Rombauer's Estate (Div. 1), 256 S. W. 1066. During this same period the courts of appeals have tacitly asserted, and have exercised appellate jurisdiction in the following cases: Polk's Heirs v. Schulenburg, 4 Mo. App. 592; Brown v. Woody, 22 Mo. App. 253; Barlow v. Clark, 67 Mo. App. 340; In re Estate of Albert, 80 Mo. App. 557; Redman v. Adams, 88 Mo. App. 534; Hill v. Taylor, 99 Mo. App. 524; In re Wood Estate, 138 Mo. App. 258, 120 S. W. 635; Bloyd v. Hartman, 223 S. W. 676.

But there are two decisions in which the question of jurisdiction was raised and expressly determined. The first, Swan v. Thompson, 36 Mo. App. 155, 162, was a circuit court action to enjoin an administrator from making a probate sale of land to pay debts. The proceeding was appealed to the St. Louis Court of Appeals, and the administrator there moved to transfer the case to the Supreme Court on the ground that title to real estate was involved. The appellate court overruled the motion on the theory that probate proceedings for the sale of land to pay debts are like proceedings to foreclose a mortgage, to enforce a lien or to sell land under execution, in all of which it is well settled that title is not involved in the constitutional sense.

Without reference to or consideration of the Swan case, the point was ruled the other way in Dildine v. DeHart (Mo. App.), 225 S. W. 130, 293 Mo. 393, 396 (Div. 2), 239 S. W. 112. That was a proceeding to sell land to pay debts, originating in the Probate Court of Clinton County. The court made the order of sale, as prayed. Some

of the devisees appealed to the circuit court. The circuit court held the order of sale void and dismissed the executors' application, because of a pending partition suit involving the same land. The executors thereupon appealed to the Kansas City Court of Appeals. The appellate court ·transferred the appeal to this court, on the ground that title to real estate was involved, and this court accepted jurisdiction, simply saying "that court (Kansas City Court of Appeals) was without jurisdiction, as the action involved title to real estate, which was directly affected by the judgment." The authorities cited are: Edwards v. M., K. & E. Ry. Co., 148 Mo. 513, 50 S. W. 89; Heman v. Wade, 141 Mo. 598, 43 S. W. 162; Whitecotton v. Wilson (St. L. Ct. App.), 197 S. W. 168; Davis v. Watson, 158 Mo. 192, 59. S. W. 65; Sp. Sw. Ry. Co. v. Schweitzer, 246 Mo. 122, 151 S. W. 128; and Jones v. Hogan, 211 Mo. 45, 109 S. W. 641.

In our opinion the conclusion in the Swan case, supra, is right, and the Dildine case is erroneous. The decisions cited by the latter, above set out, are all widely dissimilar in facts, and no one of them touches upon the particular question presented in that and this action. Evidently they are thought to announce a general principle, and they do. The principle running through them is that, for an action to involve title to real estate in the constitutional sense, the judgment sought or rendered must directly affect or operate upon · the title. That is the law, unquestionably; but does a probate court order or a circuit court judgment (on appeal from the probate court) merely directing the sale of the intestate's real estate for the payment of his debts—does such an order or judgment, we say, *directly* affect title within the meaning of the Constitution? We are convinced it does not.

This court has held in many cases that title, to be involved in an action, must be *in issue*. As said in a statement of the rule frequently quoted: "It is not enough that the judgment, when carried into execution, will affect the title to land. The title must be involved in the suit itself, and be a matter about which there is a contest." [Bailey v. Winn, 101 Mo. 658, 12 S. W. 1045; McGregor v. Pollard, 130 Mo. 335, 32 S. W. 640; Vandergrif v. Brock, 158 Mo. 687, 59 S. W. 979; Vandeventer v. Florida Savings Bank, 232 Mo. 625, 135 S. W. 23.] Indeed, the rule goes further. Title must not only be in issue, it must be in issue directly, as distinguished from collaterally or incidentally. The law on this point has been many times declared, as, for example, that "the constitutional provision vesting appellate jurisdiction in this court in cases involving title to real estate, applies only to cases in which title to land is the subject of the controversy and in which the judgment will operate directly upon the title, and not to those cases where the title to land may be merely a subject of collateral inquiry or in which the judgment will only affect the title incidentally or collaterally." [State

ex rel. v. Dearing, 180 M̦o. 63, 79 S. W. 454; State ex rel. v. Elliott, 180 Mo. 664, 79 S. W. 696; State ex rel. v. Muench, 225 Mo. 225, 124 S. W. 1124; State ex rel. v. Huck, 240 S. W. 241.]

It is on this theory the decisions of this court have ruled consistently and uniformly since the adoption of the Constitution in 1875 (and the law is the same elsewhere) that suits to foreclose or enforce mortgages, tax bills, mechanic's liens and other liens, do not involve title to real estate. In all such cases title is necessarily conceded to be in the defendant, and the plaintiff's action, instead of disputing the defendant's title, merely endeavors to subject the land, as the *defendant's* property, to the plaintiff's lien rights. [3 C. J. pp. 393, 394, secs. 181, 182; State ex rel. Haeussler v. Court of Appeals, 67 Mo. 199; Barber Asphalt Paving Co. v. Hezel, 138 Mo. 230, 39 S. W. 781; Balz v. Nelson, 171 Mo. 688, 72 S. W. 527; Stark v. Martin, 204 M̦o. 439, 102 S. W. 1089; Dubowsky v. Binggeli, 258 Mo. 200, 167 S. W. 999.]

A like rule applies when a judgment is sought to be enforced by execution against land and the levy is resisted by motion to quash or by injunction. [State ex rel. v. Elliott, 180 Mo. 1. c. 665; Lawson v. Hammond, 191 Mo. 522, 90 S. W. 431; Moore v. Stemmons, 192 Mo. 46, 90 S. W. 434; Payne v. Davies Co. Savings Assn., 198 Mo. 617, 96 S. W. 1016; Snodgrass v. Copple, 203 Mo. 480, 101 S'. W. 1090; Hudson v. Wright, 204 Mo. 427, 103 S. W. 8; Sperry v. Cook, 207 Mo. 699, 105 S. W. 1088; State ex rel. Hayes v. Ellison (Banc), 191 S. W. 49.]

It follows that to involve title within the meaning of the Constitution a judgment must adjudicate a *title controversy*. The judgment sought or rendered must be such as will directly determine title in some measure or degree adversely to one litigant and in favor of another; or, as some of the cases say, must take title from one litigant and give it to another. The rule is established by a great variety of cases. [Hanna v. So. St. J. Land Co., 126 Mo. 10, 28 S. W. 652; Barber Asphalt Paving Co. v. Hezel, 138 Mo. 232, 39 S. W. 781; Heman v. Wade, 141 Mo. 1. c. 601; Edwards v. M., K. & E. Ry. Co., 148 Mo. 1. c. 515-6; Force v. Patton, 149 Mo. 449, 50 S. W. 906; Davis v. Watson, 158 M̦o. 1. c. 196; Turney v. Sparks, 158 Mo. 366, 59 S. W. 73; Miller v. St. L. & K. C. Ry. Co., 162 Mo. 433, 63 S. W. 85; Porter v. K. C. & N. C. Ry. Co., 175 Mo. 98-9, 74 S. W. 992; Stark v. Martin, 204 Mo. 439, 102 S. W. 1089; Brannock v. Magoon, 216 Mo. 723, 726, 116 S. W. 500; Hill v. Hopson, 221 M̦o. 111, 120 S. W. 29; Weston v. Fisher, 264 Mo. 257, 174 S. W. 372; Dillard v. Sanderson, 282 Mo. 438, 222 S. W. 766.]

Without attempting to quote from the cases just cited, we permit ourselves an illustration. As already twice observed, it is firmly established that a suit to enforce or foreclose a mortgage does not involve title to real estate; on the other hand, a suit to cancel a mort-

954

gage on the ground of fraud, does involve title. [Linneman v. Henry (Banc), 291 S. W. 110; Conrey v. Pratt, 248 Mo. 582, 154 S. W. 749.] Why the difference? Because, in the former instance the relief sought is not inconsistent with title's being in the mortgagor, while in the latter the judgment prayed will destroy the mortgagee's muniment of title. [Hanna v. So. St. J. Land Co., 126 Mo. 1. c. 10.] And yet, if the answer in the foreclosure suit allege facts that might be relied on as a basis for cancellation, but plead them merely as a *defense* without asking affirmative relief, the action will still not involve title to real estate, because the only judgment that can be rendered remains one for or against foreclosure. The title issue is only collateral.

To avoid apparent inconsistency between what has been said in the preceding paragraphs and what has been ruled in other cases, it seems necessary to touch upon another thought. It is not to be understood that jurisdiction is always dependent upon the issues made by the pleadings or upon the technical perfection thereof. The kind of jurisdiction we are considering is appellate jurisdiction over the subject-matter. Unless a court have that, it cannot pass upon the sufficiency of the pleadings. [State ex rel. v. Shain, 297 Mo. 381, 248 S. W. 591; 15 C. J. 734, Sec. 35.] If the judgment *rendered* determine title, that is sufficient to classify the controversy, and title is involved in the constitutional sense, regardless of whether or not the pleadings are broad enough to sustain the judgment (Kennedy v. Duncan, 224 Mo. 666, 123 S. W. 856; Watts v. Watts, 304 Mo. 365, 263 S. W. 431); but it can be said, at least, the judgment must be such as would be responsive if a title issue were raised by the pleadings. It must be that *kind* of a judgment.

Conversely, though the judgment rendered do not determine title, yet if the judgment *sought* by the appealing litigant would directly affect title, title is directly in issue, and therefore involved; but in that case the pleadings must be looked to to settle the question. However, for the reason just stated, the scrutiny does not go to the extent of determining whether the pleadings relied on state a good cause of action, but only far enough to ascertain the class in which the case falls with respect to relief sought. There are a few exceptional instances in which it may be necessary to consult other parts of the record, as where title is put directly in issue by the pleadings, but the issue is abandoned and the pleadings fail to disclose the final relief sought (Loewenstein v. Queen Ins. Co., 227 Mo. 130, 127 S. W. 50; Jones v. Hogan, 211 Mo. 1. c. 47; Whitecotton v. Wilson, 197 S. W. 1. c. 169-70); or where, on one side, no written pleadings are required; or where, in a will contest, the will does not in terms devise real estate, but actually does. [Bingaman v. Hannah, 171 Mo. App. 186, 156 S. W. 496, 270 Mo. 611, 194 S. W. 276.] Nevertheless the fact should be remembered that it is the *judgment* sought or rendered, in each instance, which is determinative of jurisdiction; and

that when the pleadings or record, as the case may be, are consulted it is for the sole purpose of ascertaining the *direct* operative effect of the judgment—which must be directly to take title from one and give it to another.

One further observation. In applying the constitutional provision probably the greatest difficulty encountered has been in determining when a judgment does directly affect title. The long line of injunction cases to restrain trespass on real estate is a good illustration. In these cases usually the paramount and many times the sole issue is over title. The defendant answers admitting the acts complained of, but justifies on the ground that the land was his and he had a right to do them; and yet the ultimate issue is whether the defendant shall or shall not be enjoined from doing the *acts*. No direct title relief is prayed. For nearly thirty years the rule was unsettled, wavering. In Ripkey v. Gresham, 279 Mo. 521, 214 S. W. 851, it was said there was no question but that title was involved; but in Dillard v. Sanderson, 282 Mo. 436, the Court in Banc firmly settled the matter, holding that in such cases title is only collaterally in issue, and not involved in the constitutional sense.

In one case, Force v. Van Patton, 149 Mo. l. c. 449, it is said that to involve title the case must be of a character such as ejectment, actions to remove a cloud on title, or to quiet title, or to set aside a conveyance, etc. Condemnation suits, actions for specific performance of contracts to convey land, to reform a deed and the like also might be mentioned. These, of course, are merely illustrations, but they exemplify the rule. We understand the law to be that no case in which the judgment sought or rendered does not directly determine title in some measure or degree, even though it may affect title in a remoter sense (State ex rel. v. Reynolds, 265 Mo. 94-5, 175 S. W. 575), and no pure injunction or other case seeking ultimate relief only *in personam*, or monetary relief (Heman v. Wade, 141 Mo. 601, 43 S. W. 162; Price v. Blankenship, 144 Mo. 203, 208-9, 45 S. W. 1123)—no such cases involve title within the contemplation of the Constitution. There are some recent decisions which may seem to be, and may be, out of harmony with the views here expressed, but we shall not turn aside to comment on them, as they deal with other classes of actions and do not touch upon the particular questions presented in the case at bar.

Now to apply this too general, perhaps, discussion. It is clear, we think, that a probate order for the sale of real estate to pay debts, does not fall within the principles outlined in the foregoing paragraphs. The proceedings therefor, like proceedings to enforce liens, etc., are based on the assumption that the land belongs, or belonged, to the deceased, and by administrative processes it is subjected to the payment of his debts. Title is not in dispute, or, at least not in any such sense as that the probate court can or does decree concerning it.

956

Indeed, the probate court has no jurisdiction to decide title controversies. Such has been the law in this State for many years. [Shields v. Ashley's Admr., 16 Mo. 473; In re Strom, 213 Mo. 6, 111 S. W. 534, 134 Mo. App. 345, 114 S. W. 581; In re Wood Estate, 138 Mo. App. 262, 120 S. W. 635.] We therefore rule that the application of the administratrix did not involve title to real estate.

Regarding the bank's application to sell the homestead. The St. Louis Court of Appeals had before it in 1910, a proceeding, In re Estate of William Street v. McCune, 148 Mo. App. 700, 129 S. W. 253, in which an administrator made application to sell the homestead of the deceased for the payment of debts, and that court transferred the cause to this court on the ground that title to real estate was involved. While pending here the appeal was dismissed, and so this court did not pass on the case. In this Street case there were no minor heirs and the widow was dead. The homestead interest sought to be sold was that which by the homestead law of 1895 (Sec. 3620, R. S. 1899) passed to the heirs of the husband upon the death or remarriage of the widow and the attainment of their majority by the children. It was claimed by the administrator that this inherited interest, after the expiration of the occupational rights of the widow and minor children, was subject to sale for the payment of allowed demands, etc., the same as other land. The adult heirs urged the contrary view. In the instant case there are both widow and minor children, and the wording of the present statute (Sec. 5857, R. S. 1919) is different, but the two cases are near enough alike to raise the same jurisdictional question.

In transferring the case the Court of Appeals referred to the case of Snodgrass v. Copple, 203 Mo. 1. c. 482, 487. In that case it was held that a judgment sustaining a motion to quash an execution on the ground that the land levied upon was the homestead of the execution debtor, or defendant, did not involve title to real estate, but the opinion added that if the homestead exemption right of the defendant rose to the dignity of a title or estate in land (the case ruled it did not) title would be involved. So the decision really passed off on the point that title was not involved, because the defense interposed by the execution defendant concerned only an exemption right or privilege, which fell short of being an estate or title interest in land. Now in this case the homestead interest of the widow and minor children is an estate in land (Bushell v. Loomis, 234 Mo. 385, 137 S. W. 257); so, the Snodgrass case comes close to being, if it is not, authority that title is involved in this case. But we are persuaded the Street case and the Snodgrass case are both in error in so holding—if the conclusion reached earlier in this opinion be correct.

Consider for a minute the nature of the proceeding. The petitioning bank asks that the homestead interest of the widow and children be sold for the payment of its debt. As a basis for that applica-

tion it charges the debt was contracted before the homestead was acquired. This allegation fails to measure up to the requirement of the statute (Sec. 5857, R. S. 1919) that the debt be "legally charged" on the homestead during the lifetime of the intestate, as those words are interpreted in Maupin v. Longacre, 315 Mo. 872, 288 S. W. l. c. 58; but suppose the application were within the statute and averred that the debt had been charged on the homestead by some lien or incumbrance during the life of the deceased. It still would be, as it is now, nothing but an application to sell the land as the property of the widow and children, descended from the deceased, to enforce a creditor's claim. The inquiry as to the previous creation of the lien or incumbrance is purely collateral. The statute says *if* the debt was so charged the sale may be made, but the probate court does not enforce the lien or encumbrance, and even if it did, the proceeding would not involve title, as we have seen from many cases cited.

On the other hand a defense made by the widow and children that the land is their land—their homestead estate—does not put title in issue, and is no defense at all because the plaintiff admits it; but even if it were regarded as a defense, it would be a defense merely, and not an affirmative plea for relief upon which the court might by its judgment take title from one and give it to another. It would be like the illustration put a while ago, where a defendant in a mortgage foreclosure suit pleads title facts as a defense without praying cancellation of the mortgage. If an effort were made to inject a genuine title controversy into the proceeding the probate court would have no jurisdiction to try it. The truth is that such defenses as may be made in the probate court to a proceeding of the character under consideration, go to *the right to have the sale made*, and there they must and do stop. The question in this case is whether the bank has a debt of such character as entitles it to the sale sought, under its pleading. Whatever the widow and children may assert about their title rights, no judgment can be entered except to order the sale or refuse it, precisely as if, say, the sole objection were for an alleged failure to give notice or to take necessary procedural steps; and that is all the court did do in this instance—order the sale.

And so we conclude title to real estate is not involved in either angle of the case, and that the cause should be remanded to the Kansas City Court of Appeals. In so holding, we conceive no question of vested rights to be involved, no question of denying a day in court; it is simply a question of which appellate court shall hear the case.

Cause remanded to Kansas City Court of Appeals.

PER CURIAM:—This cause coming into Court en Banc, the foregoing opinion of ELLISON, C., is adopted as the decision of the court. All of the judges concur.