Jacob W. Frey, Appellant, v. Leidigh & Havens Lumber Company and Jefferson H. Smedley, as Sheriff of Jackson County.—88 S. W. (2d) 863.

Division One, December 18, 1935.

*Marley & Marley* for appellant.

*Gossett, Ellis, Dietrich & Tyler* for respondents.

FERGUSON, C.—The defendant herein Leidigh & Havens Lumber Company, a corporation, obtained a judgment, in the Circuit Court of Jackson County, foreclosing a mechanic's or materialman's lien against a certain lot, in that county, and a building erected thereon. A special execution was issued and defendant Smedley, the sheriff of Jackson County, advertised a sale of the property thereunder. About a week before the advertised date of sale the plaintiff herein Jacob W. Frey, the then owner of the property, brought this suit alleging that as to himself and those through whom he derived title the decree and judgment in the suit foreclosing the materialman's lien was void and praying the court to so adjudge and to enjoin any sale of the property thereunder. No bond was filed and no temporary restraining order was applied for or issued. The sale was made on the date fixed therefor. When this cause, sometime thereafter, came on for trial in the Circuit Court of Jackson County the trial chancellor found for defendants and dismissed plaintiff's bill whereupon plaintiff's appeal was sent to this court.

The parties hereto have not questioned our appellate jurisdiction but that question arises upon this record and it is our first duty in any case to determine whether we have jurisdiction of the appeal. This requires a statement of the history of the litigation that the nature and theory of the suit, the issues involved, relief sought and judgment entered may be developed.

On and prior to May 4, 1929, Samuel D. Nicoll and wife were the owners of, and had title to, the east half of lot 38, Ashland Ridge, in Jackson County. On May 4, 1929, the Leidigh & Havens Lumber Company, a corporation (hereinafter referred to as the lumber company) "began to furnish building material" to, and at the order of, the Nicolls for the construction of a building on said lot. Thereafter on May 16, 1929, Nicoll and wife executed a deed of trust on said lot to Albert S. Marley as trustee for F. F. Clark doing business as the Clark Mortgage Company, to secure their note for $2500 payable to the Clark Mortgage Company, which deed of trust was filed for record May 22, 1929. On July 16, 1929, the Nicolls sold, and conveyed the property, by warranty deed, to John H. Laye and wife subject to the deed of trust to Marley trustee for Clark. On the same day Laye and wife executed a second deed of trust on said lot to Albert S. Marley as trustee for F. F. Clark doing business as the Clark Mortgage Company securing the payment of their note for $1600 payable to the Clark Mortgage Company. This deed of trust specified that it was subject to the prior $2500 deed of trust executed by the Nicolls. The warranty deed to Laye and wife and their deed

of trust were filed for record July 17, 1929. It will be noted that both deeds of trust were junior and inferior to the materialman's lien which, if properly preserved about which there is no question, was effective from May 4, 1929. Marley was the trustee and Clark doing business as the Clark Mortgage Company the *cestui que trust* in both deeds of trust. On July 29, 1929, the last material was furnished by the lumber company, the aggregate amount of the charges therefor being $1058.35, and a lien claim or notice was thereafter timely and duly filed and placed of record. On February 4, 1930, the lumber company filed suit to establish and foreclose the lien. Albert S. Marley, trustee, F. F. Clark, doing business as the Clark Mortgage Company, John H. Laye and Julia Florence Laye, his wife, and Samuel D. Nicoll and Nola Nicoll, his wife, were made defendants therein and each was duly served with summons. Thereafter, on May 29, 1930, the first deed of trust securing the Nicoll note for $2500, herein described, was released of record. Two days later, May 31, 1930, advertisement of foreclosure sale of the second deed of trust, which was executed by Laye and wife to secure their note for $1600, was commenced and pursuant thereto the property was, on June 24, 1930, offered for sale, in the usual manner of conducting such sales, and was purchased for $100 by Jacob W. Frey, the plaintiff in the instant suit, who received a trustee's deed conveying the title to him; which deed was, on the same day, filed for record.

In reciting the interest of the various parties defendants in the property the petition in the lumber company's suit to enforce its lien specifically describes the Nicolls' deed of trust to the defendant Marley as trustee for the defendant Clark doing business as the Clark Mortgage Company, securing their note for $2500 to the mortgage company, and alleges that it "is junior to the lien of plaintiff" also the Nicolls' conveyance by general warranty deed of defendants Laye and wife is set out with the allegation that it was subject to plaintiff's lien but the second deed of trust by the defendants Laye and wife to Marley as trustee for Clark, securing their note for $1600 to the mortgage company is not specifically mentioned or referred to. The prayer of the petition asks judgment against the Nicolls in the sum of $1058.35 and interest and that same be declared "a first and prior lien, senior and superior to all interests of defendants in said real estate and improvements." On August 20, 1930, Marley trustee filed an answer "as trustee" in the first deed of trust alleging that the $2500 Nicolls' note secured thereby had "been paid and cancelled of record" and the deed of trust "released of record" and that he had "no further title in and to the real estate described" in the petition "under and by virtue of the aforesaid deed of trust." On March 7, 1932, the suit to establish and foreclose the materialman's lien was heard. The court found for plaintiff lumber company,

4

entered judgment against Samuel D. Nicoll and Nola Nicoll for $1058.35, the sum claimed, with interest and by its decree declared and adjudged plaintiff "entitled as against all defendants and those holding under them to a first and prior lien" on the lot or parcel of ground described and that the lien be "prior and superior to all liens and claims of Samuel D. Nicoll, Nola Nicoll, John H. Laye, Julia Florence Laye, Albert S. Marley, trustee, and F. F. Clark, doing business as Clark Mortgage Company and each of them and all persons or corporations holding under them or any of them and especially as prior to the lien of the" deeds of trust by Nicoll and wife and Laye and wife to Marley trustee for Clark doing business as the Clark Mortgage Company, separately and specifically setting out and describing each. The defendants did not appeal from the decree and judgment. Special execution issued and on June 6, 1932, advertisement that sale of the property thereunder would be made on June 28, 1932, was commenced. On June 21, 1932, Frey, the then owner of the property, commenced the instant suit naming the sheriff of Jackson County and the lumber company as defendants. It is not claimed that the lumber company did not have a valid and subsisting lien against the property but only that the adjudication that its lien was superior to the lien of the (second) deed of trust by Laye and wife to Marley, trustee, and Clark, *cestui que*, was not binding upon the parties defendant in that suit and upon that theory prays that a sale of the property under the judgment in that suit be permanently enjoined. As heretofore stated no bond was filed nor was any application for a temporary injunction made. The sale was made on the date fixed. Thereafter this cause came on for trial and the chancellor found for defendants and dismissed plaintiff's bill.

Presumably plaintiff's appeal was sent to this court on the theory that title to real estate is involved as clearly no other possible ground of our appellate jurisdiction exists. Section 12, Article 6, of our State Constitution gives this court appellate jurisdiction "in cases involving title to real estate." The prior decisions of this court are cited and reviewed and the tests of when title to real estate is involved within the meaning of this provision of the Constitution are laid down in Nettleton Bank v. McGauhey's Estate, 318 Mo. 948, 2 S. W. (2d) 771. The general rule there stated is: "That to involve title (to real estate) within the meaning of the Constitution a judgment must adjudicate a title controversy. The judgment sought or rendered must be such as will directly determine title in some measure or degree adversely to one litigant and in favor of another; or, as some of the cases say, must take title from one litigant and give it to another."

The original suit by the lumber company to enforce and foreclose its lien did not involve title to real estate. It is said in Nettleton

Bank v. McGauhey's Estate, supra: "The decisions of this court have ruled consistently and uniformly since the adoption of the Constitution in 1875 (and the law is the same elsewhere) that suits to 'foreclose or enforce mortgages, tax bills, mechanic's liens, and other liens do not involve title to real estate. In all such cases title is necessarily conceded to be in the defendant, and the plaintiff's action, instead of disputing the defendant's title, merely endeavors to subject the land, as the defendant's property, to the plaintiff's lien rights." (Authorities cited.) The holding of this court in Balz v. Nelson, 171 Mo. 682, 688, 72 S. W. 527, 529, states the rule and the reason thereof as follows: "If the suit was simply to establish or enforce a special tax bill, or a mechanic's or vendor's lien or any other kind of a lien, the title to real estate would not be involved." (Citing cases.) And the reason is that in all such cases the title is necessarily conceded to be in the defendant, for otherwise the plaintiff would not be entitled to a lien against the land in that suit, and therefore no judgment that could be rendered in the case could divest the title out of the defendant. The result of the establishment of the lien on the land and the sale of the land to satisfy the judgment might be that the defendant would lose the land, but the same is true in every case of a judgment against one who owns land. In such case the title to the land passes as the legal result of a sale on execution to satisfy the judgment, but the judgment itself rendered in the case does not strike down a muniment of title or, *ipso facto* and without any execution, divest title from the defendant." In Stock v. Schloman, 322 Mo. 1209, l. c. 1217, 18 S. W. (2d) 428, 432, we said: "In construing the provisions of Section 12, Article 6, of the Constitution, giving the Supreme Court appellate jurisdiction of cases involving title to real estate, we have steadily adhered to the construction that actions which adjudicate only as to *liens* on real estate and do not *directly* affect the *title* are not actions involving title to real estate within the meaning of that provision." Stark v. Martin, 204 Mo. 433, 102 S. W. 1089, was a suit seeking to have a certain written instrument declared a first lien on land and the lien foreclosed. As to our jurisdiction of the appeal therein this court said: "The most that can be said of this petition is, that it seeks to have the written instrument sued upon declared a first lien upon the land in dispute, and then a foreclosure of such lien. In other words, it asks the court to find the amount of a lien and enforce same by special execution prior to other admitted liens. . . . At most the trial court was called upon to determine the mere priority of liens. The title, by all parties, is admitted to be in Ed. Martin. If the court had entered judgment for plaintiff, the same might have been satisfied by a payment of the judgment. In such cases we have held that title to real estate is not involved in such manner as to give this court jurisdiction." (Citing cases.) King v. Hayes, 319 Mo. 569,

4 S. W. (2d) 1062, was a suit in equity to subject real estate to a lien. We there observed: "The mere fact that the priority of liens . . . is at issue, does not give the Supreme Court jurisdiction, where it would have none if only the establishment of one lien was sought."

The instant suit seeks to enjoin a sale of the land under the judgment in the suit to enforce and foreclose the materialman's lien. Since as we have pointed out that suit does not involve title to real estate it seems to follow that this suit could not possibly do so. [Weil v. Richardson, 320 Mo. 310, l. c. 315, 7 S. W. (2d) 348.] Citing numerous Missouri cases in support thereof we said in the Nettleton Bank case, supra, that title to real estate is not involved within the meaning of the constitutional provision relating to appellate jurisdiction "when a judgment is sought to be enforced by execution against land and the levy is resisted by motion to quash or by injunction." In Weil v. Richardson, supra, the sheriff, Richardson, had levied an execution upon land and advertised same for sale thereunder. Plaintiffs brought the suit seeking to enjoin the sale and charging that the judgment was void. The appeal therein, as in this instance, was certified to this court on the ground that title to real estate was involved. We held that we did not have jurisdiction of the appeal. Citing numerous cases we there said: "The rule appears firmly established that our appellate jurisdiction does not become fixed by the fact that title to real estate may ultimately be affected by some subsequent proceeding under the judgment challenged by the appeal. Title must be the issue. It must be the matter in dispute in the suit resulting in such judgment. The judgment itself must directly affect the title. It is not enough that the enforcement of the judgment will eventually affect the title to real estate. The denial of the injunction . . . would in no wise directly affect the title to the real estate described in the petition. Title to it will only be affected if and when a sale is had under the execution." Reverting to and applying the general rule for determining when title to real estate is involved as announced in the Nettleton Bank case and first quoted, supra, it is clearly apparent that the judgment in this injunction suit neither does nor could "adjudicate a title controversy;" nor is the "judgment sought or rendered" "such as will directly determine title" in any "measure or degree adversely to one litigant and in favor of another." Title was not in dispute or in issue in this suit and the judgment did not directly affect the title. Plaintiff's title was not divested by the judgment itself though it leaves the property exposed to the levy of an execution by the sheriff and the subsequent proceedings may operate to divest plaintiff of his title.

As we do not have jurisdiction of the appeal the cause should be

transferred to the Kansas City Court of Appeals. It is so ordered. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by Ferguson, C., is adopt-ed as the opinion of the court. All the judges concur.